UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH J. POKORNY, | : | CIVIL NO. 1:21-CV-00790 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] Acting | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

## I. Introduction.

In this social security action, the plaintiff, Joseph J. Pokorny ("Pokorny"),

seeks judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying his claim for disability insurance benefits under Title II

of the Social Security Act.  We have jurisdiction under 42 U.S.C. § 405(g).  For the

reasons set forth below, we will affirm the Commissioner's decision and enter

judgment in favor of the Commissioner.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9-1* to

*9-7*.[2]  On August 13, 2019, Pokorny protectively filed[3] an application for disability

insurance benefits, alleging that he has been disabled since October 12, 2016.

*Admin. Tr.* at 174–75.   After the Commissioner denied his claim at the initial level

of administrative review, Pokorny requested an administrative hearing. *Id.* at

103–06, 108–10, 111–12.  And on July 21, 2020, Pokorny, represented by counsel,

testified at a hearing before Administrative Law Judge ("ALJ") Mike Oleyar. *Id.* at

41–70.

The ALJ determined that Pokorny had not been disabled from October 12,

2016 (the alleged onset date), through August 4, 2020 (the date of the decision). *Id.*

at 35.  And so, he denied Pokorny benefits. *Id.*  Pokorny appealed the ALJ's

decision to the Appeals Council, which denied his request for review. *Id.* at 1–4.

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Pokorny's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, Pokorny's application for benefits is dated August 21, 2019. *See Admin. Tr.* at 174–75.  But there are references in the record to the filing date as August 13, 2019. *See id.* at 20.

This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On May 2, 2021, Pokorny, through counsel, began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence. *Doc. 1.*  He requests that the court reverse and set aside the Commissioner's decision or remand the case for further proceedings. *Id.* at 1 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). *Doc. 5.*  The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 8, 9.*  The parties filed briefs, *see docs. 12, 15, 16*, and this matter is ripe for decision.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports these findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary

sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence

"means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of*

*New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more

than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*,

48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial

evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict

created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*,

383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

*Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Pokorny was

disabled but whether substantial evidence supports the Commissioner's finding

that he was not disabled and whether the Commissioner correctly applied the

relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title II of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).  Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Pokorny met the insured-status requirements through December 31, 2021. *Admin. Tr.* at 22.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

The claimant bears the burden of proof at steps one through four of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting Cotter, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On August 4, 2020, the ALJ denied Pokorny's claim for benefits. *Admin. Tr.* at 20–35.  He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Pokorny had not engaged in substantial gainful activity since October 12, 2016, his alleged onset date. *Id.* at 22.  The ALJ noted that Pokorny had "worked 6 days after the alleged onset date, at the same job he was doing beforehand." *Id.*  Nevertheless, the ALJ concluded that this "brief work activity" "did not rise to the level of substantial gainful activity." *Id.* at 23.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Pokorny had the following severe impairments: "left knee meniscus tear, deep vein thrombosis, pulmonary embolism, post-thrombotic syndrome, complex regional pain syndrome left lower extremity, chronic venous insufficiency left lower extremity, status post endovenous radiofrequency ablation therapy, peripheral neuropathy, obesity, major depressive disorder, adjustment disorder, and generalized anxiety disorder." *Id.* at 23.

### C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Pokorny did not have an impairment or combination of impairments that met or

medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 23–25.  Specifically, the ALJ considered sections 1.02A, 1.03, 4.11, 5.06, 11.14, 12.04, and 12.06, and concluded that Pokorny's impairments did not meet the severity of any section.

In regard to sections 12.04 and 12.06, the ALJ further found that Pokorny has mild limitations in (1) understanding, remembering, or applying information; and (2) adapting or managing oneself.  And the ALJ found that Pokorny had moderate limitations in (1) interacting with others; and (2) concentrating, persisting, or maintaining pace.  These findings led the ALJ to conclude that, as stated above, Pokorny did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the statute. *Id.* at 23–25.

### D.  Step Four.

The ALJ then determined that Pokorny has the RFC to perform sedentary work with some additional limitations. *Id.* at 25.  The ALJ found that Pokorny could have frequent interaction with supervisors, coworkers, and the public. *Id.* But the ALJ limited Pokorny to performing simple, routine tasks, though not at a production rate pace. *Id.*  And, although the ALJ found that Pokorny had no sitting limitation, the ALJ included other physical limitations:

(1)  Pokorny can lift up to 10 pounds frequently and up to 25 pounds occasionally.

(2)  Pokorny can only carry two to three pounds frequently.

(3)  Pokorny can stand or walk for only one hour or less in an eight-hour workday.

(4)  Pokorny must have options to change his position to sitting or standing every 30 minutes.

(5)  Pokorny can never push or pull when standing, although he can push and pull when seated without limitation.

(6)  Pokorny can occasionally bend.

(7)
Pokorny can never stoop, crouch, balance, or climb.

(8)  Pokorny can never be exposed to heights, moving mechanical parts, or wetness.

*Id.* at 25–26.

When considering Pokorny's RFC, the ALJ found persuasive two medical opinions that found that Pokorny can only "understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)[.]" *Id.* at 30.  Notably, however, as stated above, the ALJ limited Pokorny to performing simple, routine tasks, rather than "one- and two-step tasks." *Id.* at 25, 30.

The ALJ also addressed Pokorny's claims that "he needs to elevate his legs (level with his heart) 12-15 times or even 20 times per day." *Id.* at 26.  The ALJ found that "[t]he evidence simply does not support the need to elevate as often as the claimant alleges." *Id.* at 32.  Accordingly, "[i]n terms of the need to elevate his leg, the [ALJ found] that this can be accomplished during regular breaks and lunch periods." *Id.*  Thus, the ALJ did not provide a corresponding limitation in the RFC.

**E.  Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Pokorny is unable to perform his past relevant work as a crane operator and a pool installation supervisor. *Id.* at 32.

**F.  Step Five.**

At step five of the sequential-evaluation process, considering Pokorny's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as Addresser, Compact Assembler, and Cuff Folder—that exist in significant numbers in the national economy that Pokorny could perform. *Id.* at 34–35.

In sum, the ALJ concluded that Pokorny was not disabled from October 12, 2016, through August 4, 2020. *Id.* at 34–35.  Thus, he denied Pokorny's claim for benefits. *Id.* at 35.

**V.  Discussion.**

Pokorny presents three claims.  First, Pokorny claims that, in assessing Pokorny's RFC, the ALJ failed to include or explain his rationale for excluding a limitation to one- or two-step tasks. *Doc. 12* at 6.  Second, Pokorny claims that, when determining Pokorny's RFC, the ALJ failed to include a limitation

11

corresponding to Pokorny's need to elevate his leg during the workday. *Id.* Finally, Pokorny claims that the adjudicatory process was unconstitutional. *Id.* at 15–19.  We will address each claim in turn.  For the reasons discussed below, we conclude that Pokorny's claims are without merit.

### A.  Lack of Limitation to One- and Two-Step Tasks.

When laying out the evidence on which he relied in assessing Pokorny's RFC, the ALJ found persuasive two opinions that included a finding that Pokorny "can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)[.]" *Admin. Tr.* at 30.  But the ALJ did not include in the RFC a limitation to one- and two-step tasks. *Id.* at 25–26.  Pokorny contends that the ALJ's failure to include a limitation to one- and two-step tasks was harmful error. *Doc. 12* at 7–12.  According to Pokorny, this court has found that such an error is always harmful. *Id.* (citing, e.g., *Beltran v. Berryhill*, Civ. A. 3:17-cv-00715-SES (M.D. Pa. Feb. 20, 2018); *Podunajec v. Saul*, Civ. A. No. 3:19-cv-01938-JFS at *16 (M.D. Pa. Dec. 11, 2020); *Hurrey v. Colvin*, 1:14-CV-02408, slip op. at 19–21 (M.D. Pa. Jan. 28, 2016)).

The Commissioner counters this argument by distinguishing Pokorny's case from the cases Pokorny cites, because, here, "the Commissioner met her burden of producing at least one occupation with a significant number of jobs that Plaintiff

can perform." *Doc. 15* at 25–26 (citing *Sanchez v. Comm'r*, 705 F. App'x 95, 99 (3d Cir. 2017); *Zirnsak v. Colvin*, 777 F.3d 607, 618–20 (3d Cir. 2014)).  In his reply brief, Pokorny argues: "Simply put, this error cannot be harmless." *Doc. 16* at 1.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

When crafting an RFC, the ALJ must "survey[ ] the medical evidence[.]" *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F. 3d 500, 505 (3d Cir. 2009). "Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017). And "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *15 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Moreover, in setting the RFC, the ALJ must clearly articulate his or her reasoning. In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05). Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient

14

development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 365 F.3d 501, 505 (3d Cir. 2004). The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. If an ALJ "has not sufficiently explained" how he or she considered all the evidence, "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

More specifically, when an ALJ finds a medical opinion containing a limitation to one- and two-step tasks to be "generally persuasive and supported by the record" "the ALJ [is] required to explain [a] failure to include [such] limitation[.]" *Shipman v. Kijakazi*, No. 3:22-CV-00636, 2023 WL 5599607, at *9 (M.D. Pa. Aug. 29, 2023). For illustrative example, in *Beltran*, "[t]he [ALJ] gave significant weight to the state agency's consulting psychologist['s] . . . opinion that [the claimant] 'would be expected to understand and remember simple, one and two-step instructions.'" 3:17-cv-00715-SES, at 2. "Yet, the ALJ limited [the claimant] to 'simple routine tasks, low stress, as defined as only occasional decision making required, and only occasional changes in the work setting[,]' without specifying that she be limited to only one and two-step instructions." *Id.*

Noting that "there is a significant and now well-acknowledged difference between an RFC limitation to 'one-to-two-step tasks' and an RFC limitation to 'short, simple instructions[,]'" *id.* (quoting *McGriff v. Colvin*, No. 3:16-CV-911, 2017 WL 3142336, at *3 (D. Conn. July 25, 2017)), we held that "[t]he ALJ's error in this regard is grounds for remand." *Id.*

Here, it is clear that the ALJ has made that same error.  The ALJ analyzed the October 2, 2019 opinion of State agency psychological consultant Dr. Turner and found this opinion to be persuasive, supported by the evidence, and consistent with the record as a whole. *Admin. Tr.* at 30.  In that opinion, Dr. Turner "concluded that [Pokorny] can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)[.]" *Id.*  The ALJ also assessed the February 6, 2020 opinion of State agency psychological consultant Dr. Martin and also found this opinion to be persuasive, supported by the evidence, and consistent with the record as a whole. *Id.*  Dr. Martin also found that Pokorny "can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)[.]" *Id.* The ALJ, however, found that Pokorny was limited to "performing simple, routine tasks but not at a production rate pace." *Id.* at 25.  The ALJ thus failed to include a limitation to performing one- and two-step tasks.  And we combed the ALJ's opinion for an explanation for this discrepancy and found none.

16

This error, however, can be harmless.  "In *Soto v. Kijakazi*, No. 4:21-CV-1531, 2022 WL 4358087, at *11 (M.D. Pa. Sept. 20, 2022), the Court concluded that the ALJ's failure to explain why the limitation to one and two-step tasks was not incorporated in the RFC was harmless because 'even *if* the ALJ had included a limitation to 1 or 2-step tasks and relied on the same [vocational expert] testimony already in this record, the result of the ALJ's decision, would be the same.'" *Shipman*, 2023 WL 5599607, at *10 (citing *Soto*, 2022 WL 4358087).  Because "[t]he plain language of the [Dictionary of Occupational Titles ("DOT")] definition for [General Educational Development ("GED")] Reasoning Level 1 suggests there is no conflict between it and a limitation to no more than 1 or 2-step tasks[,]" the *Soto* court found harmless error where "one of the occupations . . . has a GED Reasoning Level of 1." *Soto*, 2022 WL 4358087, at *11.  Furthermore, the vocational expert testified that there were 500,000 jobs in the national economy for the single occupation with a GED Reasoning Level of 1. *Id.*  "In the Third Circuit, if a plaintiff can perform 35,000 jobs in the national economy, and 'nothing suggests [the] jobs . . . are unusually clustered in 'relatively few locations' far from the [ ] region where [the plaintiff] lives,' a significant number of jobs exist which the plaintiff can do, and the plaintiff will be found not disabled." *Id.* (quoting *Lamourex v. Comm'r of Soc. Sec. Admin.*, No. 21-1677, 2021 WL 5860738, at *2 (3d Cir. Dec. 10, 2021) (itself quoting 20 C.F.R. § 404.1566(b))).

Here, the vocational expert testified that, given Pokorny's RFC as identified by the ALJ, Pokorny could perform the requirements of Cuff Folder and that there are 303,000 Cuff Folder positions nationally. *Admin. Tr.* at 34.  And, according to the DOT, Cuff Folder has a GED Reasoning Level of 1, so Pokorny could still perform the requirements of this position with the additional limitation to one- and two-step tasks. DOT No. 685.687-014.  We conclude, therefore, that, although the ALJ erred by neither including a limitation to one-and two-step tasks nor explaining the reasons for why he did not do so, that error was harmless and does not justify remand.

### B.  Lack of Limitation Corresponding to Pokorny's Need to Elevate His Leg.

Pokorny also argues that the ALJ erred in another respect: not including in the RFC a limitation to account for Pokorny's need to elevate his leg. *Doc. 12* at 12–15.  The key passage of the ALJ's opinion to which Pokorny refers is as follows:

> In terms of the need to elevate his leg, the undersigned finds that this can be accomplished during regular breaks and lunch periods. The evidence simply does not support the need to elevate as often as the claimant alleges.

*Admin. Tr.* at 32.  Pokorny characterizes this passage as the ALJ "acknowledg[ing]" Pokorny's "limitation." *Doc. 12* at 13.  Pokorny further argues:

> Notably, the ALJ did not find that Pokorny did not need to
> elevate his legs.  Rather, he simply stated that it can be
> accomplished during regular breaks and lunch periods.  Failure
> to include this limitation within the residual functional capacity
> assessment and hypothetical question(s) to the vocational expert
> is reversible error.

*Doc. 12* at 13 (internal citations omitted) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)).  Further, Pokorny argues, "the ALJ is not permitted to assume that such a limitation can be accommodated by employers without obtaining vocational evidence on that issue." *Doc. 12* at 14.

The Commissioner disagrees with Pokorny's arguments.  The Commissioner argues that the ALJ merely rejected limitations that he did not "believe to be consistently established in the evidentiary record." *Doc. 15* at 27.  According to the Commissioner, "the ALJ considered Plaintiff's alleged need to elevate his legs but found such need did not limit his ability to work, *i.e.*, contrary to Plaintiff's representation, the ALJ did not find that limitation 'credibly established[.]'" *Id.* at 28.

In his brief in response, Pokorny states that the Commissioner "totally missed the point here." *Doc. 16* at 3.  Pokorny reiterates his position that "the ALJ acknowledged that Plaintiff must elevate his legs and nevertheless omitted the limitation from the RFC." *Id.*

Again, we note that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC

19

determinations." *Chandler*, 667 F.3d at 361.  And in assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  But the court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder*, 2021 WL 4145056, at *6.  To allow for our review, the ALJ must "set forth the reasons for his decision." *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowlsky*, 606 F.2d at 407 (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

When assessing Pokorny's RFC, the ALJ found that Pokorny did not need to elevate his leg "12-15 times or even 20 times per day" as Pokorny testified. *Admin. Tr.* at 26.  Instead, the ALJ found that, to the extent that Pokorny did need to elevate his leg, any such elevation "can be accomplished during regular breaks and lunch periods." *Id.* at 32.  The ALJ came to this conclusion in the context of reviewing Pokorny's medical records, the opinions of medical professionals who treated or evaluated Pokorny, the Third-Party Function Report submitted by Pokorny's wife, and Pokorny's own testimony. *See id.* at 26–32.  Pokorny's argument that the ALJ somehow overlooked this limitation when translating his

conclusions to an RFC is, therefore, unpersuasive.  A more faithful reading of the ALJ's opinion shows that the ALJ found that Pokorny need not elevate his leg as often as he testified, *see admin. tr.* at 32 ("The evidence simply does not support the need to elevate as often as the claimant alleges."), nor so often that it would impact his ability to work with the other limitations outlined in the RFC, *see id.* ("the undersigned finds that [elevating his leg] can be accomplished during regular breaks and lunch periods").  It is simply not so that the ALJ acknowledged a *limitation* relating to leg elevation, as Pokorny would have us believe.  We thus conclude that the ALJ did not err in this regard.

### C.  Constitutional Challenge.

Pokorny also challenges the constitutionality of the entire adjudicatory process in which it was determined that he was not disabled. *See doc. 12* at 15–19. Pokorny explains that the government "deprived" him "of a valid administrative adjudicatory process." *Id.* at 15.  The heart of his argument is that the structure of the Social Security Administration is "unconstitutional as it violates separation of powers" because the Commissioner "cannot be removed by the President except for cause[.]" *Id.*  And, Pokorny argues, because "only the Commissioner of [the Social Security Administration] can make findings of fact and issue final decisions as to benefits eligibility[,]" the ALJ's authority was as flawed as the Commissioner

who delegated it. *Id.* at 15–16.  "Similarly," Pokorny argues, "the ALJ decided this case under regulations promulgated by" a Commissioner who had "no constitutional authority to issue those rules." *Id.* at 16.

The Commissioner agrees that the statute that guides the appointment and removal of the Commissioner of the Social Security Administration "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." *Doc. 15* at 5.  But, the Commissioner continues, "that conclusion does not support setting aside an unfavorable . . . disability benefits determination" without a showing "that the restriction actually caused [the plaintiff] harm." *Id.* (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021).  The Commissioner further argues that the ALJ that considered Pokorny's case "had his appointment ratified by an Acting Commissioner of Social Security—whom the President could have removed from that role at will, at any time." *Id.* at 6.  The Commissioner also argues a litany of other legal doctrines that "reinforce the clear takeaway from *Collins* that [Pokorny] is not entitled to relief simply because 42 U.S.C. § 902(a)(3) violates the separation of powers[:]" harmless error, de facto officer, rule of necessity, and "broad prudential considerations[.]" *Id.* at 6–23.

Pokorny addressed the Commissioner's counterarguments in a reply brief (*doc. 16* at 4–10), beginning with the strong statement that "it is actually

undisputed that the claimant's rights were violated here." *Id.* at 4.  According to Pokorny, "[t]he injury [he] suffered is not merely the denial of his disability claim[,]" but also not "receiv[ing] the constitutionally valid adjudication process from [the] SSA's Appeals Council to which [he] was entitled" and not "receiv[ing] the constitutionally valid determination by the Appeals Council to which [ ]he was entitled." *Id.* at 5, n.3.  Ultimately, Pokorny argues: "The point is that Mr. Saul had no constitutionally valid authority to delegate to these Appeals Council judges because President Biden would have fired him absent the unconstitutional statutory removal provision in this case." *Id.* at 6.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, the Supreme Court held that "the Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) (explaining the holding of *Seila Law LLC*, 140 S.Ct. 2183, 2205 (2020)).  Specifically, "the United States Supreme Court found that a violation of the constitutional separation of powers occurs when an executive agency is led by a single head who serves for a longer term than the president and can only be removed from that position for cause." *West v. Saul*, No. 20-cv-5649, 2022 WL 16781547, at *16 (E.D. Pa. Nov. 8, 2022) (citing *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020)).  The Commissioner of the Social Security Administration is one such "single head"

removable only "for cause." *See id.*; *see also Ortiz-Rivera v. Kijakazi*, No. 3:21-CV-02134, 2023 WL 25353, at *11 (M.D. Pa. Jan. 3, 2023).  The parties thus agree that the Social Security act thereby violated the constitutional separation of powers. *See docs. 14–15*.  Still, the Commissioner argues, this constitutional violation is not grounds for remand because the plaintiff cannot show that "the restriction actually caused him harm." *Doc. 15* at 5.

"[M]any courts in this circuit have found that Social Security plaintiffs do not have standing to make a separation of powers challenge because they cannot show a nexus between the unconstitutional removal provision and some compensable harm." *Ortiz-Rivera*, 2023 WL 25353, at *11 (collecting cases). Here, like in other cases in which courts have considered this argument, Pokorny fails to allege a true causal nexus between the removal provision and the decision to deny him benefits. *See, e.g.*, *Ortiz-Rivera*, 2023 WL 25353, *West v. Saul*, No. 20-CV-5649, 2022 WL 16781547, at *14 (E.D. Pa. Nov. 8, 2022); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434, 2021 WL 4993944, at *9–10 (D. Or. Oct. 26, 2021).

Pokorny fails to make a "clear allegation that Commissioner Saul's unconstitutional tenure resulted in compensable harm to him." *See Ortiz-Rivera*, 2023 WL 25353, at *11.  "There is no allegation suggesting a direct nexus between the adjudication of" Pokorny's "disability claim by the ALJ" and the Appeals

Council "and the alleged separation of powers violation in the removal statute that applies to the Commissioner." *See id.* Pokorny "has alleged no direct action by former Commissioner Andrew Saul and no involvement—or even awareness—by" President Biden "in the ALJ's decision" or the Appeals Council's denial of his request for review. *See id.* at *11 (citing *Collins*, 141 S. Ct. at 1802 (Kagan, concurring)). Moreover, Commissioner Saul "did not promulgate a new action affecting or injuring [Pokorny]," and, although Pokorny argues that President Biden would have removed Commissioner Saul but for the removal clause, he did not argue that President Biden would have appointed a new Commissioner "who would have decided [Pokorny's] disability claim *differently*." *See West*, 2022 WL 16781547, at *17 (emphasis in original). Instead, Pokorny merely "expresses dissatisfaction with the outcome of the adjudication of his disability claim." *See Ortiz-Rivera*, 2023 WL 25353, at *11. Pokorny's constitutional challenge is, therefore, unmeritorious.

## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge